THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROLAND MA, | CASE NO. C19-0399-JCC |
| Plaintiff, | ORDER |
| v. | |
| DEPARTMENT OF EDUCATION and UNIVERSITY OF SOUTHERN CALIFORNIA, | |
| Defendants. | |

This matter comes before the Court on the report and recommendation of the Honorable Mary Alice Theiler, United States Magistrate Judge (Dkt. No. 13), Plaintiff's motion for judicial review (Dkt. No. 18) and motion for reconsideration (Dkt. No. 19) and Defendant University of Southern California's (hereinafter "USC") motion for protective order or in the alternative to quash (Dkt. No. 22). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby ADOPTS Judge Theiler's report and recommendation, DENIES Plaintiff's motion for judicial review and motion for reconsideration, and GRANTS Defendant USC's motion for protective order or in the alternative motion to quash for the reasons explained herein.

I.     **BACKGROUND**

On March 18, 2019, Plaintiff Roland Ma initiated this lawsuit by filing a motion for leave

to proceed *in forma pauperis* (hereinafter "IFP"). (Dkt. No. 1.) In his complaint, Plaintiff asserts that the United States Department of Education "failed to protect students by enforcing the Family Educational Rights and Privacy Act (FERPA) and the Section 504, in accordance to the most recent Case Processing Manual (CPM) issued on November 19, 2018." (Dkt. No. 1-1 at 4.) He additionally alleges that Defendant USC "failed to provide reasonable accommodations in accordance to the Americans with Disabilities Act of 1990, as amended, and the Section 504 of the Rehabilitation Act, as amended, which also prohibits retaliation against the individuals." (*Id*.)

The Court recently presided over a lawsuit filed by Plaintiff that alleges nearly identical claims against USC. *See Ma v. Univ. of S. Cal.*, Case No. C18-1778-JCC (W.D. Wash. 2018).[1] A brief background of that lawsuit's procedural and factual history provides important context to understand the Court's rulings on all of the present motions.

On December 11, 2018, Plaintiff initiated his prior lawsuit by filing a motion for leave to proceed IFP. *Ma v. Univ. of S. Cal.*, Case No. C18-1778-JCC, Dkt. No. 1. After initially requiring Plaintiff to file a revised application, Judge Theiler granted him IFP status. *Id*. at Dkt. Nos. 3, 9. In his amended IFP application—filed December 14, 2018—Plaintiff reported that he was unemployed, had $20 cash on hand, $100 in his checking account, and $0 in his savings account. *Id*. at Dkt. No. 4. He reported that, in the past 12 months, he had received $4,562.10 in "Business, profession or other self-employment" as well as $2,851.33 in "Disability, unemployment, workers compensation or public assistance." *Id*. Plaintiff's IFP application stated that his "Parents pay for HOA dues," and that he was receiving "food stamps ($202/month), Medicaid (Apple Heath), and Seattle UDP." *Id*.

Plaintiff's prior lawsuit alleged that USC violated 42 U.S.C. § 1983; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Family Educational Rights and Privacy Act of 1974 (FERPA), 20

---

[1] Although it observes similarities with the prior case, the Court expresses no opinion about whether the complaint (Dkt. No. 1-1) states a claim upon which relief can be granted.

U.S.C. § 1232f. *Id*. at Dkt. No. 10. Plaintiff's claims arose out of his enrollment at, and eventual expulsion from, USC. *Id*. In Summer 2018, Plaintiff was a student in USC's School of Social Work and had received certain accommodations for his claimed disability. *Id*. In July 2018, USC initiated an administrative proceeding against Plaintiff after one of his professors complained about his inappropriate behavior, which included verbally assaulting her, making threats, and filing a complaint with her professional licensing organization. *Id*.

The administrative action ended with USC suspending and then expelling Plaintiff. *Id*. In his lawsuit, Plaintiff essentially alleged that USC's decision to suspend and expel him was in retaliation for seeking accommodations for his disability. *Id*. He additionally alleged that USC violated FERPA because it unlawfully disclosed some of his educational records throughout the administrative proceeding. *Id*. As a result of Plaintiff's conduct in the underlying administrative proceeding—which was characterized as harassing and threatening—two USC professors received civil protection orders against Plaintiff. *Id*. at Dkt. Nos. 57, 59. In addition, one of USC's attorneys of record, AnneMarie Hoovler McDowell (hereinafter "Ms. Hoovler"), obtained a civil protection order against Plaintiff in King County District Court because of his harassing conduct toward her. *Id*. at Dkt. No. 29.

On February 1, 2019, the Court granted USC's motion to dismiss Plaintiff's § 1983 and FERPA claims, leaving only his ADA and Rehabilitation Act claims to proceed. *Id*. at Dkt. No. 72. The Court subsequently denied Plaintiff's motion for reconsideration, motion to appoint counsel, and motion to continue a status conference scheduled for March 26, 2019. *Id*. at Dkt. Nos. 73, 83, 86. On March 18, 2019, at Plaintiff's request, the Court voluntarily dismissed his remaining claims. *Id*. at Dkt. No. 86. Plaintiff represented to the Court that it should voluntarily dismiss his claims because he would not be able to attend a status conference until at least April 2019. *Id*. at 84.

Just hours later, Plaintiff filed this nearly identical lawsuit, again seeking leave to proceed IFP. (Dkt. No. 1.) Judge Theiler directed Plaintiff to file an amended IFP application because his

initial application contained several omissions and discrepancies with the application he had filed just months earlier in the prior lawsuit. (Dkt. No. 4.) Judge Theiler wrote:

> Plaintiff indicates total yearly income in the amount of $9,827.46 and total yearly expenses in the amount of $14,565.00, but does not explain how he pays for the expenses exceeding his income. He omits information regarding financial resources previously reported in a different case filed in this Court. *See Ma v. University of Southern California*, C18-1778-JCC (Dkt. 4 at 1) ("Parents pay for HOA dues"). He fails to indicate whether and in what amounts he possesses in cash on hand and in checking and savings accounts. (*See* Dkt. 1 at 2.) In addition, plaintiff indicates he "just made the first payment" on an automobile, and appears to indicate he pays a monthly amount of $427.00 towards that purchase.

(*Id*. at 1–2.) Judge Theiler expressed concern that "plaintiff is not providing complete information regarding his financial status." (*Id*. at 2.) Judge Theiler directed Plaintiff to file an amended application within 20 days, which included:

> [C]omplete and detailed information, with specifics as to his income, any benefits, gifts or inheritances, or other sources of money, including money or other support received from family members. Plaintiff must also provide a detailed description of his monthly expenses, including specific monthly amounts paid towards housing and his vehicle, as well as a more detailed breakdown of all of his other monthly expenses.

(*Id*.) On March 25, 2019, Plaintiff filed a response to Judge Theiler's order. (Dkt. No. 7.) Plaintiff stated that "the discrepancy between the expenses of $14,565.00 in the year of 2018, and the income of $9,827.46 in the year of 2018 is due to a one-time tort claim payment of $4,736 received in the year of 2018." (*Id*. at 7.) He went on to write that "I have re-affirmed with my accountant, Seke Jung, CPA, that settlement payment from tort claim is not taxable, and should be excluded from taxpayer's gross income as stated in federal laws." (*Id*.) He attached documentation to his response confirming that he had just secured a new auto loan with an initial balance of $28,355.36, on which he was making monthly payments of $427. (*Id*. at 1–4.) Notwithstanding Judge Theiler's instructions, Plaintiff did not file an amended IFP application, did not state the amount he possessed in cash on hand or in bank accounts, and did not explain the discrepancies between his two IFP applications.

On April 4, 2019, Judge Theiler issued a report and recommendation that recommends

the Court deny Plaintiff's IFP application and require him to pay the $400 filing fee. (Dkt. No. 13 at 3.) Judge Theiler noted that Plaintiff's response to her order to file an amended IFP application "amplifi[ed] the Court's concerns" that Plaintiff was not providing "complete information regarding [his] financial status." (*Id.* at 2.) Not only did Plaintiff fail to provide the detailed information Judge Theiler requested regarding his monthly expenses and sources of income, he indicated that "he can pay an accountant, confirm[ed] his ability to pay $427.00 per month in car payments, and clarifies he qualified for a car loan with a balance of $28,355.36." (*Id.*) Judge Theiler also acknowledged information filed by USC suggesting that Plaintiff is not impoverished. (*Id.*); (*see* Dkt. No. 9) (documentation that Plaintiff took multiple international flights in 2018, paid to mail dozens of packages and subpoenas, and lives in a downtown Seattle condominium valued at over $427,000).

Plaintiff responded to Judge Theiler's report and recommendation by filing a motion for judicial review (Dkt. No. 18) and motion for reconsideration (Dkt. No. 19). In his motion for judicial review, Plaintiff appears to ask the Court to disregard the information USC filed regarding his IFP status because USC has yet to be served with a summons and instead proactively filed an NOA.[2] (Dkt. No. 18 at 1) ("The opposing counsel is striking the IFP and urging the Court to deny it based on my 'behavior' . . . but again if they are not served yet but already striking my fee waiver application, other than it is not ethical, I am unsure how to process."). In his motion for reconsideration, Plaintiff asks the Court to "reconsider the IFP" and to disregard the information USC provided in opposition to his IFP application. (Dkt. No. 19 at 2.) Plaintiff states:

> Finally, the IFP lodged in *Ma v. University of Southern California*, C18-1778-JCC, already well-explained Plaintiff has only $100.00 in his bank account (Exhibit A), and with all the medical expenses, for example, paying to see his Psychiatrist . .

---

[2] The Court is unsurprised that USC proactively filed an NOA in this lawsuit because, as the Court explains in greater detail below, Plaintiff has caused subpoenas to be issued on, among others, Ms. Hoovler and her family members. *See infra* Part II.B. In addition, Plaintiff filed this identical lawsuit mere hours after the Court voluntarily dismissed his earlier claims against USC.

ORDER
C19-0399-JCC
PAGE - 5

> . once a month out of pocket, as well as seeing Speech-language pathologist twice a week, the Court previously approved the IFP without objection from the opposing counsel; the only medical expenses that are covered by social security is seeing the providers at UW Medicine Adult Autism Clinic.

(*Id.*) Two days after Plaintiff filed his motion for reconsideration, USC filed a motion for protective order, or in the alternative, motion to quash subpoenas. (Dkt. No. 22.) USC states that it received 16 subpoenas bearing this lawsuit's case caption, which requested the personal documents of Ms. Hoovler, Evan Hoovler (her husband), and a woman with the same name as Ms. Hoovler's mother, Kathleen McDowell.[3] (Dkt. Nos. 23 at 2, 24 at 4.) In addition, non-party AT&T has filed objections to unsigned subpoenas it received bearing this lawsuit's case caption, which seek customer records regarding various cell phone numbers. (Dkt. Nos. 30, 34.)

## II.  DISCUSSION

### A.  Report and Recommendation Regarding IFP Status

Generally, all parties instituting a civil action in this District must pay a filing fee. *See* 28 U.S.C. § 1914(a); W.D. Wash. Local Civ. R. 3(b). However, the Court may authorize the commencement, prosecution, or defense of any suit without payment of fees if the plaintiff submits an affidavit, including a statement of all his or her assets, showing that he or she is unable to pay the filing fees or costs. 28 U.S.C. § 1915(a); *see* W.D. Wash. Local Civ. R. 3(b). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). "[A] plaintiff seeking IFP status must allege poverty with some particularity, definiteness and certainty." *Id.* (internal quotation marks omitted). The granting or denial of leave to proceed IFP in civil cases is within the sound discretion of the district court. *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

Judge Theiler's report and recommendation contains several reasons to conclude that Plaintiff's IFP application fails to allege poverty with sufficient particularity, definiteness, and

---

[3] The person identified in the subpoenas, Kathleen A. McDowell, is a different person.

certainty. As an initial matter, Plaintiff did not file a revised IFP application that provided the categories of information that Judge Theiler ordered. (*Compare* Dkt. No. 4, *with* Dkt. No. 7.) Plaintiff failed to report how much money he possesses in cash and in bank accounts. (*See* Dkt. Nos. 1, 7.) He did not state how much money he pays per month toward his housing. (*Id*.)

Plaintiff both omitted and provided inconsistent information regarding his sources of money or other benefits he receives. For example, in his IFP application filed in December 2018, Plaintiff reported that his parents pay his HOA fees, that he receives food stamps, and that he was enrolled in a Washington State Medicaid program. *See Ma v. Univ. of S. Cal.*, Case No. C18-1778-JCC, Dkt. No. 1 (W.D. Wash. 2018). By contrast, in his March 2018 IFP application, he did not report any of this information. (*See* Dkt. No. 1.) Plaintiff has also indicated in a subsequent filing that he receives Social Security benefits—something that was not disclosed in either IFP application. (*See* Dkt. No. 28.) Plaintiff's initial IFP application also failed to disclose that he had received a one-time payment of $4,736 arising from a tort claim. (*Compare* Dkt. No. 1, *with* Dkt. No. 7 at 1.) Judge Theiler gave Plaintiff an opportunity to address these deficiencies, but he failed to do so.

Other information in the record makes it exceedingly apparent that Plaintiff is not impoverished—for example, Plaintiff was recently approved for a $28,355 car loan, on which he makes a $427 monthly payment. (*Id*.) Plaintiff also reports that he consulted with his accountant about whether certain financial information needed to be disclosed on his IFP application. (*Id*.) This information, when combined with the inconsistent and incomplete answers on Plaintiff's IFP application, demonstrates that Plaintiff should not be granted IFP status.

The Court construes Plaintiff's motion for reconsideration, filed in response to Judge Theiler's report and recommendation, as objections to the report and recommendation. (*See* Dkt. No. 19.) First, Plaintiff suggests that Judge Theiler erred by failing to assume that the information contained in his IFP was true. (*Id*. at 1) (citing *Martinez v. Kristi Cleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004)). As the Court has explained above, Judge Theiler had good

reason not to accept Plaintiff's representations at face value—Plaintiff provided shifting and incomplete information regarding his true financial status. Not only did Plaintiff fail to comply with Judge Theiler's order that he provide specific and detailed information regarding his income and expenses, much of the information Plaintiff did provide suggests that he is not impoverished.

Second, Plaintiff suggests that Judge Theiler wrongly considered the information filed by USC regarding his financial status. (*Id.* at 2.) Although Judge Theiler's report and recommendation mentions the information submitted by USC, that information did not provide the only basis for her conclusion that Plaintiff's IFP application should be denied. As previously noted, Judge Theiler gave numerous reasons why Plaintiff failed to provide sufficient information in support of his IFP application, and that the information he did submit indicated that IFP status should not be granted.[4] Plaintiff also argues that because Judge Theiler granted his IFP application in the first lawsuit, she should have approved his current application. (Dkt. No. 7.) Plaintiff's position does not follow—the very reason Judge Theiler recommends denying the current application is because of its inconsistencies and omissions when compared with the initial application.

For those reasons, the Court ADOPTS Judge Theiler's report and recommendation (Dkt. No. 13) and OVERRULES Plaintiff's objections (Dkt. No. 19). The Court also DENIES Plaintiff's motion for judicial review (Dkt. No. 18). Plaintiff shall pay the $400 filing fee within 10 days of the issuance of this order. The Court finds that such a time period is more appropriate than the 30 days recommended by Judge Theiler, based on the fact that Plaintiff re-filed this lawsuit only hours after the Court dismissed his prior lawsuit. No further delay is warranted by Plaintiff's conduct.

//

---

[4] Moreover, the Court does not believe it was improper for USC to file, or for Judge Theiler to consider, the declaration and supporting documentation regarding Plaintiff's financial status. All of that information further suggests that Plaintiff should not be allowed to proceed IFP.

ORDER
C19-0399-JCC
PAGE - 8

**B.     Defendant's Motion for Protective Order**

District courts have significant discretion to control discovery. *See* Fed. R. Civ. P. 26(b)(1); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). District courts may issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," that would result from the disclosure of certain discovery. Fed. R. Civ. P. 26(c)(1)(A). The party seeking a protective order has the burden of proving that good cause exists for the entry of the order. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

On timely motion, district courts must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Courts have ruled that subpoenas that seek to compel information that is irrelevant to the claims at issue inherently impose an undue burden. *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010); *Compaq Comput. Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335–36 (N.D. Cal. 1995). If either a motion for protective order or motion to quash are granted, the Court "must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). An exception to this rule exists where the opposing party's conduct was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii); *see also Jimenez*, 733 F. Supp. 2d at 1274.

USC seeks a protective order to prevent Plaintiff from seeking discovery about Ms. Hoovler, her family members, or any of its attorneys. (Dkt. No. 22 at 8.) USC asserts that Plaintiff has issued at least 16 subpoenas seeking the personal information of Ms. Hoovler, her husband, and Ms. McDowell. (Dkt. No. 26-1.) The subpoenas sought, among other things, a list of Mr. and Ms. Hoovler's creditors from the three major credit reporting agencies; Ms. Hoovler's phone records from Verizon and Mr. Hoovler's phone records from T-Mobile; Ms. Hoovler's email records from Google; Mr. Hoovler's bank records from JP Morgan & Chase; and criminal

history information about Ms. McDowell from multiple sheriff's departments across the country. (*Id.*)[5] Although these subpoenas were unsigned, Plaintiff has indicated in several filings that he is responsible for sending the subpoenas. (*See* Dkt. No. 28 at 2) ("so I have used WeWork Colorado to propose the subpoenas on behalf of me and sent to Ms. Hoovler for review. As you aware too, she had objected all the subpoenas in document no. 22-24; the subpoenas are vital because all of it started from the threatening email and text messages."); (*see* Dkt. No. 35 at 2) ("Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Dkt. #30) are important and vital in this process as the University of Southern California (the "University") was claiming the expulsion is due to the threatening text messages (Exh. D) that the Court had denied considering.").

These subpoenas were clearly sent for no other purpose than to harass and annoy USC, its attorney, Ms. Hoovler, and her relatives. The records Plaintiff sought are irrelevant to his claims in this lawsuit. Ms. Hoovler, her husband, and Ms. McDowell are not parties, and played no role in Plaintiff's alleged ADA retaliation claims against USC. (*See* Dkt. No. 1-1.) Moreover, the information sought—bank records, phone records, credit reports, and background information—is highly sensitive and could be utilized only for an improper purpose, such as to harass or annoy. Indeed, Plaintiff appears to indicate in various emails that he sent the subpoenas because USC objected to his IFP application, and that he wants to use the subpoenas as leverage for USC to withdraw its objection. (*See* Dkt. Nos. 28 at 2, 29 at 2–3.) To the extent Plaintiff suggests such records are relevant or responsive to the civil protection order Ms. Hoovler obtained in King County District Court, that action has nothing to do with Plaintiff's claims against USC in this lawsuit. If anything, Plaintiff's subpoenas appear to be further evidence of his alleged harassing conduct toward Ms. Hoovler and others.

Plaintiff's litigation conduct is intolerable, and will not be condoned, regardless of

---

[5] As the Court previously mentioned, AT&T has filed objections to multiple subpoenas it has received. (Dkt. Nos. 30, 34.)

whether he is proceeding *pro se*. As explained above, USC has demonstrated good cause for the issuance of a protective order. Therefore, USC's motion for a protective order (Dkt. No. 22) is GRANTED. Plaintiff has not come forward with any evidence or justification that suggests the issuance of these subpoenas, under the circumstances, was substantially justified. Therefore, USC is entitled to its reasonable attorney fees for having to file this motion. Fed. R. Civ. P. 37(a)(5)(A)(ii). Ms. Hoovler filed a declaration stating that she spent 18.3 hours working on USC's motion for protective order at a rate of $275 per hour. (Dkt. No. 24 at 4.) While Ms. Hoovler's rate is certainly reasonable for this legal market, the Court FINDS that no more than 10 hours should have been expended on this motion, particularly in light of the prior filings USC has made in this case and Plaintiff's prior lawsuit. Therefore, the Court ORDERS Plaintiff to pay USC's reasonable attorney fees in the amount of $2,750.00.

## III. CONCLUSION

For the foregoing reasons, the Court ADOPTS Judge Theiler's report and recommendation (Dkt. No. 13), DENIES Plaintiff's motion for judicial review (Dkt. No. 18) and motion for reconsideration (Dkt. No. 19), and GRANTS Defendant's motion for protective order (Dkt. No. 22). In accordance with the Court's order:

1. Plaintiff's motion for reconsideration is construed as objections to Judge Theiler's report and recommendation and his objections are OVERRULED.
2. Plaintiff shall pay the $400 filing fee to the Clerk's Office within 10 days of the issuance of this order. If Plaintiff fails to pay the filing fee within that time, the Clerk is DIRECTED to close Plaintiff's case.
3. Plaintiff shall not seek any discovery in this matter until he has paid the $400 filing fee. Regardless of whether Plaintiff pays the filing fee, he shall not seek any discovery from AnneMarie Hoovler, Evan Hoovler, Kathleen McDowell, or from anyone else related to Ms. Hoovler. Plaintiff shall not seek any discovery regarding the personal affairs or information of Defendant USC's attorneys.

4. The Court QUASHES all subpoeans that have been issued in this matter. No party shall file any subpoenas or seek any discovery until Plaintiff pays the $400 filing fee and the Court holds a status conference and enters a scheduling order pursuant to Federal Rule of Civil Procedure 16.

5. Plaintiff is ORDERED to pay Defendant USC's reasonable attorney fees in the amount of $2,750.

DATED this 30th day of April 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE